IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MICHAEL S. MEEKS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 6:10cv00014 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Plaintiff Michael S. Meeks ("Meeks") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"). Meeks argues on appeal that the Administrative Law Judge ("ALJ") erred by failing to properly evaluate Meeks' mental impairment, including failing to order a new mental consultative evaluation. Meeks further argues that the Appeals Council erred by failing to remand the case to the ALJ following Meeks' submission of new evidence regarding his mental health. Finally, Meeks argues that the ALJ improperly engaged in "expert witness shopping" at the hearing following a voluntary remand by selecting a different vocational expert ("VE") to testify. Having reviewed the administrative record and considered the arguments of counsel, the court concludes that the case must be remanded for further administrative proceedings as the ALJ's decision is not supported by substantial evidence. Remand is appropriate in this case under sentence four of 42 U.S.C. § 405(g) for consideration of the November 2007 mental consultative exam performed on Meeks by David Leen, Ph.D. Accordingly, the Commissioner's

Motion for Summary Judgment (Dkt. # 18) is **DENIED**, and Meeks' Motion for Summary Judgment (Dkt. # 11) is **GRANTED** and the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings.

**I**

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard." Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a

preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and

---

[1] RFC is a measurement of the most a claimant can do despite his or her limitations. See 20 C.F.R. §§ 404.1545(a), 416.945(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. §§ 404.1529(a), 416.929(a).

3

national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II

Meeks was born in 1959 and at the time of the ALJ's decision was a "younger individual" under the Act. 20 C.F.R. §§ 404.1563, 416.963. He completed the eleventh grade and earned his GED. (Administrative Record, hereinafter "R" at 66.) At the time of the first hearing he lived with his grandmother. (R. 83.) At the time of the second hearing, he lived alone in his grandmother's house. (R. 892.) He previously worked as a mechanic laborer, maintenance laborer and fish cleaner. (R. 66, 67, 69.) Meeks filed an application for benefits on December 20, 2001, claiming disability as of October 19, 2001. (R. 255, 654, 657.)[2] The Commissioner denied his application for benefits based on a medical records review on January 9, 2003, and this decision was confirmed on reconsideration on March 19, 2003. (R. 179, 189.) An administrative hearing was scheduled for July 2003; however, the ALJ continued this hearing to obtain a mental consultative evaluation ("CE"). (R. 150-156.) A CE was obtained from Jerome S. Nichols, Ph.D., and the hearing reconvened on December 17, 2003 (R. 60-149, 626-630.) The ALJ issued a decision on February 23, 2005 finding that Meeks was not disabled. (R. 24-45.) However, following Meeks' appeal of the decision to the court, the Commissioner filed an unopposed motion to remand and in October 2006, the court remanded the case to the Commissioner for further administrative proceedings. Thereafter, the Appeals Council vacated the ALJ's February 23, 2005 decision and remanded the case for a new hearing. (R. 722.) The

---

[2] Meeks filed his first application for DIB in September 1998, alleging disability since July 31, 1997. (R. 250-51.) Meeks application was denied at both the initial and reconsideration levels of review. (R. 163, 169.) Thereafter, Meeks filed a request for a hearing before an ALJ. (R. 172.) In April 1999, the ALJ vacated the reconsideration determination and remanded the case to the state agency to obtain a consultive evaluation for "depression, anxiety, and a possible somatoform disorder." (R. 176-78.) However, no further action was taken on that application and Meeks returned to work.

Order from the Appeals Council stated that the ALJ will "obtain evidence from a vocational expert in order to clarify whether the moderate mental limitations identified by Jerome S. Nichols, Ph.D., an examining source, compromise the claimant's occupational base for all work." (R. 722-23.) The remanded hearing took place on May 30, 2007. (R. 888-945.)

In a decision dated August 23, 2007, the ALJ found that Meeks had severe impairments consisting of degenerative disc disease, myofascial pain syndrome, anxiety and depression. (R. 703.) Considering these impairments, the ALJ found that Meeks retained the residual functional capacity ("RFC") to perform sedentary work, except that due to his physical impairments he should only occasionally balance, kneel, crouch, crawl, stoop/bend, and should avoid climbing. (R. 705, 707.) With regard to mental functioning, the ALJ found that Meeks had "moderate limitations in his ability to interact appropriately with the public, supervisors, and co-workers, respond appropriately to changes in a work setting, and in his ability to understand, remember and carry out detailed or complex instructions, and in the ability to maintain attention and concentration for extended periods." (R. 707.) These were the moderate mental limitations identified by Dr. Nichols' assessment. (R. 707.) His mental impairments only mildly interfere with his abilities in any other functional area. (R. 707.) Based on this RFC, the ALJ determined that Meeks could not perform his past relevant work. (R. 705-706.) However, the ALJ further determined that a significant number of jobs exist in the national and regional economies which Meeks can perform. (R. 706, 708.) Accordingly, the ALJ concluded that Meeks is not disabled under the Act. (R. 708.) The Appeals Council denied Meeks' request for review and this appeal followed. (R. 661-664.) Meeks and the Commissioner filed respective motions for summary judgment and the court heard oral argument on March 4, 2011.

**III**

Meeks argues on appeal that the ALJ failed to properly evaluate his mental impairment and that the Appeals Council erred by failing to remand the case to the ALJ following Meeks' submission of new evidence regarding his mental health. Meeks further argues that the ALJ improperly engaged in "expert witness shopping" at the remand hearing.

Meeks makes no arguments regarding his claimed physical disability on appeal. At the 2007 hearing, Meeks testified that due to his physical impairments, including pain in his lower back and right hip, which shoots down his leg, he cannot sit or walk very long. (R. 907, 916-17.) Meeks stated during the 2003 hearing that the only thing that helps his pain is laying in a recliner or on a sofa with pillows under his knees and he reported that he just lies on the couch and looks at the ceiling all day. (R. 83-84, 87.)

Meeks injured his lower back in 1996 while at work. (R. 395.) An MRI of Meeks' lumbar spine in June 1996 showed degenerative disc disease, a small central prolapse and a central soft disc protrusion. (R. 391.) A second MRI in September 1998 showed no significant changes from the prior MRI in 1996. (R. 416.) Another MRI in October 2000 showed mild lumbar spondylosis. (R. 443.)

Meeks began seeing Dr. Murray Joiner in November 1997 and he had approximately 16 visits through February 2001. (R. 431, 450.) His November 1997 physical exam showed full range of motion in his extremities and a negative straight leg test. (R. 431.) Dr. Joiner found no evidence of pathology to support Meeks' pain complaints and released him to full duty work. (R. 430, 457.) Dr. Joiner consistently recorded that Meeks' pain complaints were not credible and noted "symptom exaggeration and inappropriate illness behavior." (R. 455, 457.)

However, when Meeks began seeing Dr. Joan Resk in October 2001, she noted that a "structural exam reveals marked paravertebral muscle spasm of the lumbosacral spine….pelvis shows marked difference in pelvic heights in the supine position…left side markedly higher." (R. 541.)  Moreover, after he started osteopathic manipulative treatments he reported decreased back pain.  (R. 535.)  Dr. Resk wrote "patient relates that his back feels better with manipulation" and "patient readily admits that I am the only one that has helped [him] at all in that time [since 1996]." (R. 535.)  Dr. Resk treated Meeks approximately 40 times between October 2001 and August 2002.  (R. 541, 463.)  November 2001 office notes indicate that shots received at a previous office visit eased Meeks' pain and that Meeks "notes marked improvement in his back" and "admits decreased pain."  (R. 530-33.)  December 2001 office notes indicate significant improvement, stating Meeks is "able to get up and function around house more" and recording gross range of motion of both hips within normal limits.  (518-19, 521.)  In February 2002, Meeks reported that "his daily activities are not as painful" and a physical exam showed normal gross range of motion of hips and a level pelvis.  (R. 482-83.)  However, the notes from Meeks' last office visit in August 2002 indicate that had not been into the office for treatment for several months due to financial reasons and "his back is killing him and he can't sleep.  He cry's [sic] a lot." (R. 545.)

Meeks saw Dr. Teass, a chiropractor, from May through August 2005 seeking treatment for neck and back pain following a motor vehicle accident.  Dr. Teass recorded objective findings of acute back injury following the accident, including "marked muscle spasms and tenderness" and "cervical and lumbar ranges of motion restricted and painful."  (R. 854.)  Meeks' medical records show that he was involved in a motor vehicle collision on April 20,

7

2005 and that he was struck while driving a vehicle that was towing a boat.[3] (R. 823.) Meeks also saw another chiropractor, Dr. Foley, from April through May 2007, for 12 visits. (R. 879-887.)

As Meeks makes no arguments regarding his claimed physical disability, the issue turns on his claimed non-exertional impairments. Specifically, Meeks argues on appeal that the ALJ failed to properly evaluate his mental impairment.

### A. The ALJ's Evaluation of Meek's Mental Impairment

Meeks argues that the ALJ erred in his decision not to order a new CE at the May 2007 hearing. Meeks states that the medical record documents an ongoing mental condition, with symptoms not in existence when Dr. Nichols performed the previous CE on September 7, 2003. Meeks also argues that Dr. Nichols' 2003 CE is outdated, as it was performed nearly four years prior to the date of the ALJ's decision. Additionally, Meeks complains that Dr. Nichols' CE did not meet the requirements of 20 C.F.R. § 404.1517 which directs that the examiner be provided necessary background information about a claimant's condition prior to the examination. Meeks states that "there is no indication in the record that either of Dr. Luckett's documents or any other medical evidence whatsoever was provided to Dr. Nichols in connection with the consultative examination." (Dkt. 12, p. 13.) Meeks claims that, because Dr. Nichols' CE did not meet the requirements of 20 C.F.R. § 404.1517, the ALJ erred in relying on the CE in making his disability determination.

The Commissioner argues that the ALJ did not err in declining to obtain a new CE because the ALJ already had the necessary information to decide disability. The Commissioner

---

[3] The Commissioner asserts that this motor vehicle accident contradicts Meeks' claim that he cannot vacation and that, while he kept his boat tag and hunting/fishing licenses current, he did not use them. (R. 89, 91; Dkt. 19 at 22.) Of course, there was no testimony at the hearing regarding why Meeks was driving a vehicle towing a boat, or whether he had, in fact, gone fishing.

further argues that Dr. Nichols' CE was valid, stating that Dr. Luckett's report is not properly considered "necessary background information" as set forth in the regulations. Moreover, the Commissioner states that Meeks has not set forth any evidence showing that the agency failed to provide Dr. Nichols with the necessary information to perform the CE. Finally, the Commissioner states that there is no need to remand the case for another CE because Meeks has already "filled [the] gap" with the CE performed by Dr. Leen on November 7, 2007. (Dkt. 19, p. 25.)

At the May 2007 hearing, the ALJ denied Meeks' request for a CE. (R. 891.) In his August 2007 opinion, the ALJ indicated that "the evidence in the instant case is sufficient to make a determination whether the claimant is disabled, and no further evidence is required." (R. 691.) In support of this statement, the ALJ stated that Meeks had "a scant history of psychological complaints or treatment, and there is no conflict, inconsistency or ambiguity in the evidence that needs to be resolved and (…) there is no evidence of a change in the severity of the claimant's condition that warrants such consultative examination." (R. 691-92.)

According to the regulations, a consultative examination can be ordered by the ALJ once he has given "full consideration to whether the additional information needed . . . is readily available from the records of [the claimant's] medical sources." 20 C.F.R. §§ 404.1519a(a)(1), 416.919a(a)(1) (2008). Prior to ordering a consultative examination, the ALJ "will consider not only existing medical reports, but also the disability interview form containing [the claimant's] allegations as well as other pertinent evidence in [the claimant's] file." 20 C.F.R. §§ 404.1519a(a)(1), 416.919a(a)(1) (2008). A consultative examination is obtained in order to resolve any conflicts or ambiguities within the record, as well as "to secure needed medical evidence the file does not contain such as clinical findings, laboratory tests, a diagnosis or

9

prognosis necessary for decision." 20 C.F.R. §§ 404.1519a(a)(2), 416.919a(a)(2) (2008). A consultative examination must be ordered "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." 20 C.F.R. §§ 404.1519(b), 416.919a(b) (2008). Other situations which normally require a consultative examination include when there is an indication of a change in condition that is likely to affect the ability to work, but the current severity of impairment is not established. Id.

Additionally, the United States Court of Appeals for the Fourth Circuit has ruled that the ALJ has a duty to help develop the record. See Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). In Cook, the court stated that "the ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on evidence submitted by the claimant when that evidence is inadequate." Cook, 783 F.2d at 1173. The regulations require only that the medical evidence be "complete" enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability and the claimant's residual functional capacity. See 20 C.F.R. §§ 404.1513(e), 416.913(e) (2008).

As discussed above, the record of Meeks' treatment begins when he hurt his back in 1996 while at work and includes numerous doctor's visits and treatment related to back pain. (R. 395.) However, the record also contains multiple references to his mental health, including depression and anxiety. In September 1996 Meeks was diagnosed with low back pain, but the doctor's notes also indicate that his wife says he has been a "bear" to live with and that he is "stubborn and will only take medications when he is in excruciating pain." (R. 388.) In October 1996, Dr. Stelmack, a treating doctor, diagnosed Meeks with depression, partially related to

chronic low back pain. (R. 385-86.) In July 1997, another treating doctor, Dr. Amick wrote "I think he may be depressed and this is adding to his pain symptoms." (R. 424.)

Dr. Joiner, also a treating doctor, began his treatment of Meeks in November 1997 and maintained from the first visit that there was no organic reason for Meeks' severe, debilitating pain. (R. 429, 430-31, 453-54.) However, Dr. Joiner did note "the presence of relatively significant depression…." (R. 434.) Dr. Joiner wrote in August 1998, "this examiner challenges anyone who has seen the patient …to give an objective explanation for his reported paralysis or to treat the patient in a way where he will report he is better and capable of return to work in any capacity." (R. 457.)

In contrast, Dr. Resk, who began treating Meeks in October 2001, recorded a very different perception, including diagnosing an organic reason for his pain. Dr. Resk stated the following in a letter related to Meeks workers compensation case, dated January 20, 2002:

> I disagree with the findings of Dr. Joiner and take professional exception to his examination completeness and treatment of this patient. Patient has retrolithiasis of the lower lumbar spine. This condition creates extreme pain….The patient has a high school education. He is afraid of needles and surgical intervention.[4] His requests for information were apparently met with silence. So, he denied the interventions based upon fear and lack of information. The patients pain level was undertreated and subsequently would never resolve…Since Dr. Joiner did not see this patient but twice no appropriate pain medications were ever prescribed to this patient to control his pain level….I would definitely state that this patient's diagnosis is incomplete and the treatment received was less than the standard of care in the medical community.

(R. 586-589.)

Dr. Resk also noted that Meeks reported depression multiple times throughout her treatment. In January 2002, she writes Meeks was "feeling really depressed and wants to cry all

---

[4] Several medical records indicate that Meeks is afraid of needles and does not want injections for pain. (R. 385, 421.)

11

the time." (R. 504.) In February 2002 she also wrote that Meeks was "feeling depressed." (R. 477-78.) In August 2002 Dr. Resk noted "[Meeks] says his back is killing him and he can't sleep. He cry's [sic] a lot." (R. 545.)

On July 9, 2003, Dr. Jeffrey Luckett examined Meeks at the request of counsel. Dr. Luckett diagnosed Meeks with major depressive disorder, recurrent, moderate to severe without psychotic features, likely superimposed upon an underlying Dysthymic Disorder. He noted that the depressive condition was exacerbated, if not created, by chronic pain. (R. 374, 616.) Dr. Luckett wrote "Mr. Meeks appears to be experiencing a high degree of subjective distress and pain suggestive of a pain disorder with psychological and medical components." (R. 618.) Dr. Luckett found Meeks had a GAF of 46-49.[5] (R. 620.) However, Dr. Luckett also performed a Personality Assessment Inventory ("PAI) and found that "his validity scales suggest Mr. Meeks may not have answered in a completely forthright manner. His validity scales suggest certain patterns or combination of features that are unusual or atypical in clinical populations, but relatively common among individuals feigning mental disorders." (R. 618.) However, despite this, Dr. Luckett found that the test was not uninterpretable. Dr. Luckett completed a Medical Source Statement (Mental) dated July 25, 2003, in which he opined that "due to pain condition and depression/anxiety claimant unlikely to be able to complete a full day/week of employment." (R. 377.)

Dr. Nichols examined Meeks at the request of the ALJ on September 26, 2003. Dr. Nichols stated that "diagnostically, it is difficult to determine the extent of Meeks' problems." (R. 630.) Dr. Nichols noted that some of Meeks' responses to the PAI were suggestive of

---

[5] A GAF in the range of 41-50 signifies serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job).

12

malingering, and stated "it is very difficult to know the extent of malingering or the possible influence of a cry for help."[6] (R. 627.) However, he further stated that "he does appear to be depressed and diagnostic impression at this time would be a depressive disorder not otherwise specified." (R. 630.) Dr. Nichols assigned Meeks a GAF of 51.[7] (R. 630.) Dr. Nichols completed a Medical Source Statement (Mental) on September 26, 2003 and noted moderate impairments in Meeks ability to understand, remember, and carry out detailed or complex instructions, maintain attention and concentration for extended period and interact appropriately with the public, supervisors, co-workers and respond appropriately to work pressures in a normal work setting. (R. 632.) The ALJ adopted these mental limitations in his August 23, 2007 decision. (R. 707.)

Meeks saw Dr. Kenneth Stifler for several counseling sessions beginning in July 2004. (R. 648.) Dr. Stifler wrote a letter to Meeks' attorney in August 2004 indicating that his diagnostic impression, based on clinical observation only after three meetings, was adjustment disorder with depressed mood. (R. 648.) He also wrote that "Meeks appears to be sincere in his wish to return to work, to want only fair compensation and consideration for his work related injury and he does not present as manipulative or med seeking or to be feigning difficulties to gain unreasonable benefits." (R. 648.) Dr. Stifler also completed a Medical Source Statement (Mental), based solely on observation and self-reports from Meeks, stating that Meeks cannot function for sustained periods (more than one hour per day). (R. 651.)

---

[6] Dr. Nichols stated, "[i]t seems as though both malingering and possible psychosis needed to be ruled out." (R. 63.)

[7] A GAF in the range of 51-60 signifies moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers).

Meeks began seeing Dr. Sarah Baskett, a psychiatrist at the Bedford Free Clinic, in October 2006. In December 2006, Dr. Baskett diagnosed him with depression and anxiety attacks. (R. 871-72.) The treatment notes spanning eight visits from October 2006 to March 2007 contain repeated references to depression and reported anxiety and panic attacks when Meeks has to leave his house. (R. 868-77.) Meeks was prescribed Paxil and Buspar related to these symptoms. (R. 876-77, 871-72.)

Several factors indicate that the ALJ should have ordered a new CE prior to taking evidence in the May 2007 hearing. First, nearly four years passed between Dr. Nichols' CE in September 2003 and the hearing before the ALJ on May 30, 2007. Moreover, Meeks sought mental health treatment subsequent to Dr. Nichols' assessment, including counseling sessions with Dr. Stifler in 2004 and Dr. Baskett in 2006-2007. Dr. Baskett diagnosed Meeks with depression and anxiety in December 2006 and prescribed him medication. (R. 873.) Both the significant passage of time and new treatment subsequent to Dr. Nichols' CE indicate a change in Meeks condition that is likely to affect his ability to work. Thus, a new CE should have been ordered.

However, following the May 2007 hearing, on November 7, 2007, at the request of his attorney, Meeks underwent a CE performed by David Leen, Ph.D. (R. 672-78.) Dr. Leen diagnosed Meeks with major depressive disorder, anxiety disorder not otherwise specified and panic disorder without agoraphobia. (R. 674.) Dr. Leen indicated that Meeks had a GAF of 48. He opined that Meeks would be unable to "consistently perform work activities of any kind in a timely and appropriate manner," maintain reliable attendance or deal with the usual stresses of competitive work. (R. 675.) The nature of Dr. Leen's diagnosis and the similarity between the psychological symptoms he documented, compared to the symptoms documented by treating

14

psychiatrist Dr. Baskett in the period prior to the ALJ's decision, indicate that Dr. Leen's report related to Meeks' condition prior to the date of the ALJ decision.

Accordingly, because of the existence of the November 7, 2007 CE, a new CE is not required and the court will remand for consideration of Dr. Leen's November 7, 2007 CE.

The court further finds Meeks' allegations that Dr. Nichols' CE failed to meet the requirements of 20 C.F.R. § 404.1517 lack merit. There is no evidence in the record that Dr. Nichols was not provided the "necessary background information" required by the regulations.

### B. Evidence Submitted to Appeals Council

Meeks also argues that the Appeals Council erred in failing to remand the case to the ALJ following Meeks submission of new evidence following the hearing. As indicated above, Meeks submitted to the Appeals Council a psychological evaluation performed by Dr. Leen. (R. 672-78). By letter dated March 1, 2010 the Appeals Council refused jurisdiction, noting that "Dr. Leen's evaluation, conducted more than ten weeks [after the ALJ ruled on the issue of disability] is not clearly relevant to whether the claimant was disabled on or before the [date of the ALJ's decision]." (R. 662.)

Because the court is remanding this case for consideration of Dr. Leen's CE, it need not address Meek's argument regarding this issue.

### C. Vocational Expert

Meeks asserts that the ALJ engaged in improper "expert witness shopping" by asking a hypothetical question containing the same material nonexertional limitations, but using a different VE, in the remanded case. VE John Newman testified at the first hearing, which took place on December 17, 2003. (R. 60-149.) The ALJ's hypothetical question regarding nonexertional impairments used the moderate impairments listed by Dr. Nichols in his Medical

Source Statement (Mental), completed September 26, 2003. (R. 139-40, 632.) Newman testified that the five moderate areas of mental impairment that the ALJ gave eroded the job base such that no jobs existed at any exertional level.[8] (R. 148.) However, the ALJ issued a decision in February 2005 finding that Meeks was not disabled. (R. 24-45.) As indicated previously, following Meeks' appeal of the decision to the court, the Commissioner filed an unopposed motion to remand and in October 2006, the court remanded the case to the Commissioner for further administrative proceedings. The court order provided only that "the Appeals Council will remand this case to an administrative law judge for further proceedings." (R. 719.) Thereafter, the Appeals Council vacated the ALJ's February 23, 2005 decision and remanded the case for a new hearing. (R. 722.)

The Order from the Appeals Council stated that the ALJ will "obtain evidence from a vocational expert in order to clarify whether the moderate mental limitations identified by Jerome S. Nichols, Ph.D., an examining source, compromise the claimant's occupational base for all work." (R. 722-23.) The ALJ noted in the remanded hearing that "…really we're here, as far as the primary reason of the case was remanded was to clear under the non-exertional limitations…for mental impairment." (R. 922.)

Ann Marie Cash served as the VE for the remanded hearing, which took place on May 30, 2007 hearing.[9] (R. 888-945.) The ALJ asked Ms. Cash a hypothetical question involving the

---

[8] These included the following nonexertional limitations based upon mental impairment: moderate limitation in the ability to understand, remember and carry out detailed or complex instructions, maintain attention and concentration for extended periods, interact appropriately with the public, supervisors, and co-workers and respond appropriately to work pressures in a normal work setting. (R. 139-40.)

[9] At the hearing, Meeks and the ALJ had the following conversation:

Counsel: Judge, I have no objections to her qualifications, although if we're going to follow the remand of the Appeals Counsel I think it'd be more appropriate to have the last vocational expert we had here….

following nonexertional limitations: moderate difficulty in the ability to understand, remember and carry out detailed or complex job instructions, maintain attention and concentration for extended periods, interact appropriately with the public and co-workers and respond appropriately to work pressures in a normal work setting. (R. 923.) This hypothetical question has identical material nonexertional limitations to the question asked of Mr. Newman in the prior hearing. (R. 140, 923.)[10] In response to the hypothetical, Ms. Cash indicated that the individual could perform sedentary, unskilled work. (R. 924.) Thus, Meeks argues that "as a result of the Commissioner's successful expert witness shopping, the exact same limitations which the Commissioner's first VE found precluded all competitive work, the Commissioner's second VE found did not preclude work….[T]he Commissioner's actions in this regard offend due process, pervert the remand process, and are inconsistent with the spirit of the Court's remand Order." (Dkt 12, p. 22.)

The Commissioner asserts that allegations that the ALJ "shopped" for a favorable VE lack merit, stating that is "simply not feasible for an Agency who processes millions of claims each year." (Dkt. 19, p. 29.) The Commissioner argues that the ALJ reasonably relied on the vocational testimony of Ms. Cash and the ALJ's disability determination is supported by substantial evidence.

---

ALJ: Yeah, but I'm not sure the Appeals Counsel specified it had to go back before the same vocational expert.

Counsel: It did not, Judge. I think you're absolutely right. I think the order did not specify that.

ALJ: And we just did this in our normal rotation, so we don't have the same vocational expert every time at the hearing, so we have --- we're with Ms. Cash today.

(R. 917-918.)

[10] The ALJ omitted a moderate difficulty in the ability to interact appropriately with supervisors; however, he included it in a later hypothetical. (R. 925.)

The court finds no evidence that the ALJ engaged in improper expert witness selection. However, the court does note that the two vocational experts engaged to provide expert testimony regarding available jobs reached different conclusions when confronted with essentially identical hypothetical questions. In short, under the same hypothetical scenario, VE Newman testified at the December 2003 hearing that no jobs existed at any exertional level, while VE Cash testified at May 2007 hearing that sendentary, unskilled work was available, including hand packers and drivers. (R. 924.)

Accordingly, upon remand for a new administrative hearing it is ordered that a new vocational expert will testify.

## IV

Although the court concludes that the record does not provide substantial evidence to sustain the ALJ's conclusion that Meeks is not disabled, the court is unable at the same time to recommend an outright award of benefits. The record is in need of further development with regards to Meeks' non-exertional impairments, specifically consideration of the CE performed by Dr. Leen on November 7, 2007. That is not to say, however, that a finding of disability will result. Ultimately, the decision of the Commissioner may well be apt, but that cannot be determined without consideration of Meeks' mental impairments as set forth in Dr. Leen's CE.

For these reasons the Commissioner's Motion for Summary Judgment (Dkt. # 18) is **DENIED**, and Meeks' Motion for Summary Judgment (Dkt. # 11) is **GRANTED** and the Commissioner's decision is **REVERSED** and **REMANDED** for further administrative proceedings consistent with this opinion.

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to counsel of record.

Entered: August 4, 2011

*/s/ Michael F. Urbanski*

Michael F. Urbanski
United States District Judge